# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | | |
|---|---|---|
| Lance Pleasants,<br>　　　Petitioner, | ) ) ) | |
| v. | ) ) | 1:18cv1259 (CMH/MSN) |
| Harold W. Clarke,<br>　　　Respondent. | ) ) ) | |

## MEMORANDUM OPINION

Lance Pleasants, a Virginia inmate proceeding pro se, has filed a petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his convictions

in the Circuit Court of King George County. Respondent filed a Motion to Dismiss and Rule 5

Answer, along with a supporting brief and exhibits. Dkt. Nos. 12-13. Petitioner was given the

opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.

1975) and Local Rule 7K. Dkt. No. 14. Petitioner filed a response. Dkt. Nos. 17-18. For the

reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will be

dismissed, with prejudice.

## I. Background

The record reflects the following. Petitioner is detained pursuant to a final judgment of

the Circuit Court of King George County, entered December 3, 2015. Case Nos. CR15-24, -27,

-142. Pursuant to a jury trial, petitioner was convicted of burglary with intent to commit rape,

attempted rape, and malicious wounding. Id. Petitioner was sentenced to seventy-eight years

imprisonment. Id.

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, asserting, among

other claims, that there was insufficient evidence to convict him of burglary with intent to

commit rape and attempted rape because the evidence failed to prove he intended to rape the

victim.  Record No. 0163-16-2.

The facts as laid out by the Court of Appeals are as follows.[1]

[T]he evidence proved that D.K. was home alone in her bedroom at
approximately 1:00 a.m. when she saw two flashes of light in the living room.
Upon walking to her bedroom doorway, D.K. saw a man in her living room.  The
man, later identified as [petitioner], asked D.K. if her husband was home and
walked toward her.  D.K. retreated into her bedroom and sat on her bed.

[Petitioner] followed D.K. into her bedroom.  When he was inches away from her,
she turned on her bedside lamp.  [Petitioner], who was wearing blue nitrile gloves
and a mask, told her not to do so and turned off the lamp.  He instructed D.K. to
be quiet and to lie down on the bed.  D.K. said, "No."  [Petitioner] again told her
to lie down and be quiet.  D.K. again told him "no."  When [petitioner] repeated
the instruction a third time, he moved his right hand from about her knee up the
inside of her legs and up towards her body.

D.K. pushed his hand away and said "no" more forcefully.  [Petitioner] pulled out
a folding knife and said, "Lay down and be quiet or I swear to God I'll come back
and kill your kids."  D.K. grabbed both of [petitioner's] wrists and tried to keep
his hands away from her.  The struggle continued as D.K. pushed [petitioner] out
of her bedroom and into her kitchen.  D.K. pulled a decorative dagger from the
wall and stabbed [petitioner].  She turned on the light and saw a puddle of blood
on the floor.

[Petitioner] yelled, "You stabbed me, bitch," and stabbed D.K. in the abdomen
with his knife.  D.K., fearing [petitioner] was going to try and stab her a second
time, tried to get control of [petitioner's] wrist.  Their struggle continued back
into D.K.'s bedroom from which [petitioner] eventually fled.  When emergency
personnel arrived and prepared to transport D.K. to the hospital, a teenage boy
approached and asked a deputy to come help his injured brother.  The deputy
followed the boy to a nearby trailer and found [petitioner] semi-conscious,
bloody, and breathing heavily.  He had a stab wound in his chest.

Upon investigating the perimeter of the residences, the deputies found several
items between D.K.'s trailer and [petitioner's] trailer that matched D.K.'s account
of her attack.  They found a black mask, a pair of blue nitrile gloves, and a black
folding knife.  They also discovered a large pool of blood and a pool of vomit.

---

[1] The Supreme Court of Virginia refused further review of petitioner's direct appeal.
Because the Court of Appeals of Virginia's June 28, 2016 Order was the last reasoned state court
decision on petitioner's sufficiency of the evidence claims, its reasoning is imputed to the Supreme
Court of Virginia.  See Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991).

When the police searched [petitioner's] trailer, they found a pair of jeans wet with blood. In the pocket of the jeans were a condom, a set of keys, and a pair of eyeglasses. The keys opened the door to [petitioner's] home, and [petitioner] was known to deputies to normally wear eyeglasses with black frames.

D.K. suffered from a punctured abdomen and a perforated bowel as a result of the stabbing. She required surgery and was hospitalized for several days.

Deputies submitted samples of blood from around D.K.'s home for analysis. DNA tests determined the blood was that of [petitioner].

Id. The appeal was denied on June 28, 2016. Id. Petitioner then appealed to the Supreme Court of Virginia but his petition for appeal was refused on February 8, 2017. Record No. 161036.

Petitioner then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia where he claimed, inter alia, that his trial counsel was ineffective for failing to ensure that his petit jury was comprised of a fair cross section of petitioner's community and failing to raise a Batson challenge.[2] Record No. 171611. The state habeas petition was denied on August 15, 2018. Id.

On September 27, 2018, petitioner filed the instant federal petition, wherein he challenges his convictions on the following grounds.

1. There was insufficient evidence to convict him of burglary with intent to commit rape and attempted rape.

2. Trial counsel was ineffective for failing to raise a Batson and/or fair-cross-section challenge regarding the Commonwealth's systematic exclusion of members of petitioner's race from the jury.

Dkt. No. 2.

## II. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's

---

[2] The other claims asserted in petitioner's state habeas petition are irrelevant to the instant petition.

adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial.[3] 28 U.S.C. § 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. A federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly applied the legal standard. Woodford v. Visciotti, 537 U.S. 19, 24

---

[3] Petitioner is incorrect that a state court's failure to cite to federal law and that mixed questions of law and fact allow for de novo review in a federal petition. The question is whether the state court decided a claim on the merits, which is the case as to both of petitioner's claims.

(2002). Rather, "the federal habeas scheme … authorizes federal court intervention only when a state-court decision is objectively unreasonable." Id. at 27. A federal court reviewing a habeas petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

### III. Analysis

#### A. Claim One – Sufficiency of the Evidence

Petitioner claims that the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt as to the burglary with intent to commit rape and attempted rape convictions because the evidence only established that he intended to commit larceny, not rape. Specifically, petitioner claims that there were no overt acts committed in furtherance of the commission of a rape. Petitioner also asserts that the facts that (1) there were no cars at the residence; (2) all the lights were off, (3) petitioner did not know the victim's relationship status, and (4) petitioner was searching the residence when the victim surprised him, establish that petitioner believed the residence to be unoccupied and that he was only there to burglarize the residence.[4] Finally, petitioner argues that he only touched the victim on her leg, and did not attempt to remove her clothes or make sexual comments or actions.

The Court of Appeals of Virginia denied this claim on direct appeal, stating as follows.

> "The intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." Cuffee v. Commonwealth, 61 Va. App. 353, 369, 735 S.E.2d 693, 701 (2013) (quoting Wvtm v. Commonwealth, 5 Va. App. 283,292,362 S.E.2d 193, 198 (1987)). "Whether the actions of a particular defendant rise to the level of an

---

[4] Petitioner's affidavit in which he swears to his version of the facts regarding the incident at issue cannot be considered as evidence in evaluating the instant petition because it is not part of the state court records. Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court ….").

attempted crime is a fact-specific inquiry that must be decided on a case-by-case basis." Ashford v. Commonwealth, 47 Va. App. 676, 681, 626 S.E.2d 464, 466 (2006). "Intent may be, and most often is, proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts." Vinev v. Commonwealth, 269 Va. 296, 301, 609 S.E.2d 26, 29 (2005). The trier of fact may look to the offender's conduct and statements to determine his intent. Campbell v. Commonwealth, 12 Va. App. 476, 484, 405 S.E.2d 1,4 (1991) (en banc). Additionally, "[t]he finder of fact may infer that a person intends the natural and probable consequences of his acts." Id.

Here, a rational fact finder could conclude that [petitioner] entered D.K.'s home with the intent to rape her. He wore a mask and gloves and entered her trailer in the middle of the night when she could reasonably be expected to be in bed sleeping. At the time he entered the trailer, he was carrying a knife and a condom.

Upon encountering D.K, in the trailer, his immediate reaction upon seeing her was not to leave; instead, he asked her multiple times if her husband was home and followed her into the bedroom. [Petitioner] turned off D.K.'s light and instructed her repeatedly to lie down on the bed and be quiet. When she refused, he pushed his hand between her legs, pulled out a knife, and threatened her family. Only D.K.'s continued resistance thwarted [petitioner's] advances. He did not leave her trailer until she stabbed him.

Based upon [petitioner's] conduct and statements, the evidence was sufficient to support a finding that [petitioner] intended to rape D.K., both at the time he entered her home, and at the time he placed his hand on her leg. Accordingly, the evidence was sufficient to support [petitioner's] convictions for attempted rape and burglary with the intent to commit rape.

Record No. 0163-16-2

Jackson v. Virginia, 443 U.S. 307 (1979) provides the standard by which a federal court must review a habeas petition alleging insufficiency of the evidence. A federal court must determine whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original) (internal citations omitted). Challenges based on the sufficiency of the evidence thus face "two layers of judicial deference." Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam). In a jury trial, such as petitioner's, the jury has the sole responsibility for determining what conclusions to draw from

the evidence presented at trial. Thus, an appellate court reviewing a challenge to the sufficiency of the evidence on direct appeal may overturn the trial court's verdict only if no rational trier of fact could have agreed with the outcome. Cavazos v. Smith, 132 S. Ct. 2, 3 (2011) (per curiam). A federal habeas court may only overturn this state court decision if the decision was "objectively unreasonable;" it may not overturn the decision simply because it disagrees with the outcome. Id. (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

Reviewing the evidence in the light most favorable to the prosecution, the evidence supporting a finding of guilt on the burglary with intent to commit rape and attempted rape convictions was aptly summarized by the Court of Appeals of Virginia. Based on that evidence, a rational trier of fact could have found petitioner guilty. Thus, the state court's decision is not objectively unreasonable, nor is it contrary to or an unreasonable application of established federal law. The decision is also not based on an unreasonable determination of the facts. For the foregoing reasons, Claim One will be dismissed.

### B. Claim Two – Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, petitioner must meet the two-pronged test established in Strickland v. Washington, 455 U.S. 668 (1984). Under this test, petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong. Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant, we concluded it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the

7

proceeding unreliable, and the sentence or conviction should stand."). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

### i. Batson Claim

Petitioner first claims that his trial counsel was ineffective for failing to "object to the Commonwealth's systematic exclusion of members of [petitioner's] race from the jury pursuant to Baston v. Kentucky, 476 US 79 (1986)." Petitioner states that there were four African American or Hispanic members of the 34-member venire. Three were struck for cause even though, petitioner asserts, they stated they would be unbiased and impartial. Of those three, one member was struck because she knew petitioner's mother, another because she knew petitioner's former girlfriend and had heard about the case, and a third because she did not speak English well. Petitioner claims that the "reasons proffered" for excluding every African American and Hispanic from the jury were not legitimate. The final minority member of the venire was one of the prosecution's peremptory strikes

At the same time, petitioner asserts, Caucasian members of the venire who knew the detectives were not struck for cause, and two Caucasian members of the venire stated they were unsure if they could remain impartial, but they were also not struck for cause.

Petitioner also argues that the state habeas court decision was unreasonable because they did not liberally construe his pleadings, even though he was a pro se petitioner, and that the state habeas court's decision was an unreasonable application of Strickland v. Washington, 455 U.S. 668 (1984) because (1) trial counsel did not make a Batson motion even though there were no members of the jury that were the same race as petitioner, which shows deficient performance, and (2) had there been "even one minority jurist, there [is] a reasonable probability that [he] would have been acquitted of the charged offenses."

8

The Supreme Court of Virginia dismissed this ineffective assistance of counsel claim in the state habeas petition, finding that

> this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates the trial court asked counsel whether he had any "Batson motions," and counsel responded he did not. Petitioner has failed to allege facts suggesting counsel unreasonably forewent a potentially meritorious objection to the manner in which the Commonwealth engaged in jury selection. Petitioner does not single out any specific strike exercised by the Commonwealth as being objectionable and, instead, suggests some or all must have been racially motivated simply because the Commonwealth "systematically struck the only minority persons in the jury pool" and the jury ultimately selected contained no persons of petitioner's race.
>
> However, these assertions are not sufficient to establish counsel could have prevailed on challenging any one of the Commonwealth's strikes. Even if counsel could have made a prima facie showing that the Commonwealth struck a juror based on race, petitioner has not alleged facts suggesting the Commonwealth could not have articulated a race neutral reason justifying that strike or that counsel might have successfully argued that reason was pretextual. See Juniper v. Commonwealth, 271 Va. 362, 407-08, 626 S.E.2d 383, 412 (2006) (explaining the mechanics of a Batson challenge). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 171611.

Petitioner has not established that trial counsel was deficient because he has not established that a Batson challenge would likely have been successful. As to the three minority venire members who were struck for cause, trial counsel would not have prevailed on a Batson challenge because Baston challenges only apply to peremptory strikes. Batson, 476 U.S. at 96 ("[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.") (emphasis added).

As to the one minority member of the venire that the prosecution used a peremptory strike on,

> [w]hen adjudicating a <u>Batson</u> claim, trial courts follow a three-step process: First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.
>
> The opponent of the strike bears the burden of persuasion regarding racial motivation and a trial court finding regarding the credibility of an attorney's explanation of the ground for a peremptory challenge is entitled to great deference.

<u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2199 (2015) (internal quotations and citations omitted). Here, petitioner points to no evidence that the Commonwealth's peremptory strike of the only remaining minority member of the venire was on the basis of race. See <u>Blakeney v. Branker</u>, 314 F. App'x 572, 597 (4th Cir. 2009) (affirming district court's ruling that allegations that "1) [petitioner] is African-American; 2) prosecutors used a peremptory strike to excuse ... an African American, from [petitioner's] jury; and 3) in three other ... capital cases, prosecutors allegedly struck all African American jurors who were not struck for cause" was insufficient to establish a prima facie showing that a peremptory challenge has been exercised on the basis of race). Thus, petitioner has not shown that there is a reasonable probability that counsel would have prevailed on a <u>Batson</u> challenge as to the Commonwealth's peremptory strike.

Finally, plaintiff's conclusory allegation that there is a reasonable probability that the outcome of his trial would have been different if there had been one minority on the petit jury is insufficient to show prejudice. Therefore, the state habeas court's decision is not objectively unreasonable, contrary to or an unreasonable application of established federal law, or based on an unreasonable determination of the facts.

### ii. Fair-Cross-Section Claim

Petitioner also claims that trial counsel was ineffective because he did not ensure that the jury represented a fair-cross-section of his community. Petitioner relies on the arguments laid

out above in support of this claim. The Supreme Court of Virginia dismissed this claim, stating

that

> petitioner contends he was denied the effective assistance of counsel because counsel did not ensure petitioner's jury was fairly selected, which resulted in a jury that contained no persons of petitioner's race. Petitioner elaborates that his "jury pool" contained thirty-four potential jurors but "did not consist of a fair cross-section of [petitioner's] community." Petitioner suggests counsel should have objected on equal protection grounds because members of his race were excluded from his jury. Petitioner contends the outcome of his trial might have been different had his jury been selected from a properly composed venire.

> The Court holds this claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland because petitioner has failed to establish counsel unreasonably neglected a potentially meritorious issue. "To establish a prima facie violation of the fair-cross-section requirement, ... a defendant must prove that: (1) a group qualifying as distinctive (2) is not fairly and reasonably represented in jury venires, and (3) systematic exclusion in the jury selection process accounts for the underrepresentation." Prieto v. Commonwealth, 283 Va. 149, 186-87, 721 S.E.2d 484, 506 (2012). Petitioner has not alleged facts sufficient to indicate counsel might have established the final two criteria.

> Further, to the extent petitioner claims counsel should have objected to the racial composition of the jury ultimately seated to try petitioner's case, such an objection would have been meritless absent a discriminatory selection process. See Taylor v. Louisiana, 419 U.S. 522, 538 (1975) (although "petit juries must be drawn from a source fairly representative of the community[, there is] . . . no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population"). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.

Record No. 171611. "We must first determine whether [petitioner's] fair cross-section claim has

merit, since it would not be deficient for counsel to withhold a meritless objection." Rivas v.

Thaler, 432 F. App'x 395, 402 (5th Cir. 2011) (citation omitted).

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979). Here, petitioner has only stated that there were four minority members of the thirty-four-member venire, however, he has made no allegations that this did not represent a fair and reasonable number in relation to the number of minorities in the community. In fact, petitioner concedes that King George County has a "predominately Caucasian population." Thus, petitioner has not provided any evidence in support of the second Duren prong. See United States v. Bryant, 417 F. App'x 220, 222–23 (4th Cir. 2008) ("[Petitioner] presents (and the record before us contains) no evidence that the percentage of African–Americans on the jury venire is not fair and reasonable in relation to the community as a whole. [Petitioner] leaves us to speculate about whether the venire was a reasonable representation. Speculation is no substitute for evidence."); Thomas v. Borg, 159 F.3d 1147, 1150 (9th Cir. 1998) ("We have held that the second prong of the Duren test requires proof, typically statistical data, that the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community.") (internal quotation marks, alteration, and citation omitted). Finally, as correctly stated by the state habeas court, the petit jury need not represent a fair-cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 538 (1975) ("It should also be emphasized that in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population.").

Because petitioner's fair-cross-section claim is without merit, trial counsel was not deficient. Therefore, the state habeas court's decision was factually reasonable and conformed with applicable federal principles, and may not be disturbed here. Accordingly, petitioner's ineffective assistance of counsel claims will be dismissed.

## IV. Conclusion

Nothing in the record indicates that the state court decisions regarding petitioner's claims were objectively unreasonable, contrary to or an unreasonable application of established federal law, or based on an unreasonable determination of the facts. Accordingly, this petition will be dismissed, with prejudice, by an Order to be issued with this Memorandum Opinion.

Entered this ___19th___ day of ___June___ 2019.

_____
United States District Judge

Alexandria, Virginia